TIMOTHY GALARNYK,                                    Civil No. 08-3351 (JMR/AJB)

                    Plaintiff,

v.                                                  **REPORT AND RECOMMENDATION**

CAPTAIN TOM FRASER, UNKNOWN
SUPERVISOR OF CAPTAIN TOM FRASER,
CAPTAIN MIKE MARTIN, UNKNOWN
MINNEAPOLIS POLICE OFFICERS,
UNKNOWN MINNESOTA STATE
PATROL/TROOPERS, and the CITY OF
MINNEAPOLIS,

                    Defendants.


      Blake Horwitz, Esq., Horwitz, Richardson, & Baker LLC, for Plaintiff Timothy Galarnyk
      (by telephone).

      Marsha Eldot Devine, Esq., Assistant Attorney General, for State Defendants-Minnesota
      State Patrol Captain Tom Fraser, an unknown supervisor of Captain Tom Fraser, and
      unknown Minnesota State Patrol/Troopers.


      This matter is before the Magistrate Judge for Report and Recommendation ("R&R") on

Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), failure to state claim for

which relief can be granted, or, in the alternative, Rule 56, summary judgment [Docket No. 18].

Plaintiff is a bridge construction, construction safety, and risk management consultant.  See Am.

Compl. ¶ 5 [Docket No. 13].  Defendants, for purposes of this motion, are Minnesota State Patrol

Captain Tom Fraser, an unknown supervisor of Captain Fraser, and unknown Minnesota State

Patrol Troopers (hereinafter "Defendants").  Plaintiff filed a complaint asserting violations of his

civil rights under federal and state law.  Id. at ¶ 1.  The Amended Complaint asserts violations of Plaintiff's constitutional rights arising from Defendants' actions to conspire and falsely arrest him, retaliate against him for televised comments he made relating to the 2007 Interstate 35 bridge collapse in Minneapolis, Minnesota, and treat him differently than other similarly situated people.  Id. at pp. 11-14.  Plaintiff seeks compensatory and punitive damages, plus legal fees.  Id.

Defendants now move for dismissal of the claims against them because (1) they were not involved in the decision to arrest Plaintiff, nor did they actually arrest him; (2) allegations in Plaintiff's Complaint do not rise to the level of constitutional violations; and (3) Defendants are entitled to qualified immunity because their actions were objectively reasonable in light of the circumstances.  See Defs.' Mem. 2 [Docket No. 20].

The matter has been referred to the undersigned for R&R under 28 U.S.C. § 636 and Local Rule 72.1(b).  A hearing was held on February 12, 2009, at the United States Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.  For reasons discussed below, the undersigned **recommends** that Counts I-V of Plaintiff's Amended Complaint should not be dismissed.  Count VI should be dismissed, and Plaintiff's demand for punitive damages in Counts II and V should be stricken at this time.  Furthermore, the Court **recommends** that Defendants' summary judgment motion should be denied.

# BACKGROUND[1]

Plaintiff Timothy Galarnyk serves as chief executive officer of Construction Risk Management, Inc., a Wisconsin-based corporation.  Plaintiff, who lives in Wisconsin, has nearly 30 years of bridge construction, construction safety, and risk management experience.

On August 2, 2007, Plaintiff visited the site of the Interstate 35 bridge that collapsed in Minneapolis, Minnesota, the previous day.  Plaintiff was introduced to Captain Tom Fraser and Major Al Smith, both of the Minnesota State Patrol.  Plaintiff gave his business card to Fraser and Smith.  In return, Fraser gave Plaintiff his business card and told him to call any time.

Between August 1 and August 9, 2007, Galarnyk appeared on national and international news broadcasts to discuss the collapsed bridge.  On August 4 and August 5, Plaintiff appeared on a Fox News Channel program hosted by Geraldo Rivera.  During his television interviews, Plaintiff made comments critical of officials in Minnesota regarding the inspection, maintenance, and management of the Interstate 35 bridge.  He also called for a criminal investigation into the conduct of Minnesota transportation officials, who he said had acted negligently.

On August 9, 2007, at about 9:30 a.m., Plaintiff returned to the site of the collapsed bridge in Minneapolis.  He intended to work with the agencies investigating the collapse, particularly the National Transportation Safety Board ("NTSB").  Plaintiff showed his business card to Minneapolis police officers, who told him to "check in" with an official from the Minnesota Department of Transportation ("MNDOT").  After he checked in, Plaintiff asked for directions to the NTSB trailer.  The MNDOT official directed him to a nearby trailer.

---

[1]To determine whether a claim survives a Rule 12(b)(6) motion, the court presumes as true the non-moving party's factual allegations.  Holloway v. Lockhart, 792 F.2d 760, 762 (8th Cir. 1986).  Accordingly, facts found in the background section are taken as pled from Plaintiff's Amended Complaint.

In the trailer, Plainitff introduced himself as an independent investigator, gave his business card to three NTSB officials, and spoke to them about the bridge collapse. He offered to help the NTSB in the investigation.

Plaintiff left the NTSB trailer and walked to the Occupational Safety and Health Administration ("OSHA") trailer. In the OSHA trailer, he showed his business card, identified himself, and provided some safety advice to a local engineering firm. Plaintiff then stepped out of the OSHA trailer and began walking to his vehicle.

Before he could reach his vehicle, he was stopped and detained by Captain Fraser of the Minnesota State Patrol. A Minnesota State Patrol supervisor, whose identity is not known by Plaintiff, told Fraser to take him to a command post and detain him.

At the command post, a Minneapolis police officer, whose identity is not known by Plaintiff, treated him in a hostile manner and threatened to arrest him if he "ever came within 10 miles of the site" again. The Minneapolis police officer then told Plaintiff he was being arrested and detained for questioning. The Minneapolis police officer placed Plaintiff in handcuffs, searched him, and then put him in a Minneapolis police vehicle. During the incident, Plaintiff overheard Captain Fraser tell the unknown Minneapolis police officer that Plaintiff was "that guy from Geraldo" and to be sure to keep him "in a dark room" away from the bridge site so he could not gather more information.

Plaintiff was not told why he was being arrested, nor has he ever been told the reason for the arrest. Plaintiff has not been charged with any crime related to the arrest.

Shortly after the Plaintiff's arrest, Captain Mike Martin, of the Minneapolis Police Department, told a news outlet that Plaintiff had fraudulently posed as a federal official at the

bridge site.  A television report and a written story, published on the WCCO-TV website on the day of the arrest, included the passage: "[p]olice said Timothy Galarnyk posed as a federal official from Washington, D.C.  Galarnyk got into a roped off area fraudulently, they say, hoping to help work with heavy equipment.  He is now in jail."[2]

Martin made additional statements to the media, claiming Galarnyk had defrauded national television networks, including the Fox News Channel program hosted by Geraldo Rivera.  The St. Paul Pioneer Press reported Martin's comments, publishing: "[a]nother man, whom Martin would not identify, had duped at least one television network — including a show hosted by Geraldo Rivera — into thinking he was a bridge expert, Martin said."[3]  The story also reported Martin as saying: "If you try to sell products and services and capitalize on people, we will make sure you don't have the credibility to sell Girl Scout cookies."

## DISCUSSION

Rule 12(b)(6) Motion to Dismiss

### *Standard of Review*

A complaint should be dismissed when it fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  A complaint challenged by a motion to dismiss pursuant to Rule 12(b)(6) need not contain detailed factual allegations to survive, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to avoid dismissal. Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  Factual allegations must be sufficient "to raise a right to relief above the speculative

---

[2] See Pl.'s Ex. A [Docket No. 1].

[3] Id. at Ex. B.

level...on the assumption that all allegations in the complaint are true." Id. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)("[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  All reasonable inferences must also be drawn in the non-movant's favor. Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir. 1996). Moreover, a complaint is not adequate if the pleading "left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 1968.  A complaint must contain sufficient facts to state a claim that is not only conceivable, but plausible. Id. at 1974.  A complaint should not be dismissed simply because a court doubts that a plaintiff will be able to prove all factual allegations in the complaint. Id. at 1964-65. Accordingly, a well-pled complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965.

*Legal Analysis*

**1.  Defendants' Argument that Plaintiff's Section 1983 Claims Fail as a Matter of Law**

***a.  Defendants' Direct Involvement***

Plaintiff alleges that Defendants violated his constitutional rights under the First Amendment (Retaliation-Freedom of Speech/Count III), Fourth Amendment (False Arrest/Count I), and Fourteenth Amendment (Equal Protection and Conspiracy/Counts VII and IV).  Section 1983 imposes personal liability on state officials only if they are directly and personally involved in the deprivation of constitutional rights. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985).  Personal involvement of a named defendant is an essential element of such a claim

because the doctrine of *respondeat superior* does not apply to actions brought under 42 U.S.C. § 1983. <u>See, e.g.</u>, <u>Choate v. Lockhart</u>, 7 F.3d 1370, 1376 (8th Cir. 1993).

Defendants contend that they should be dismissed from the lawsuit because they were not directly or personally involved in depriving Plaintiff of his constitutional rights.  For example, Defendants state that "[t]he only allegations involving Captain Fraser are that: 1) he gave a business card to the Plaintiff (Plaintiff's Amended Compl., ¶ 6); 2) he stopped the Plaintiff and escorted him to the Minneapolis Command Post (Plaintiff's Amended Compl., ¶¶ 18, 20); and 3) he was overheard informing an unknown police officer that the Plaintiff was "that guy from Geraldo," and he should be kept "in a dark room" away from the investigation site (Plaintiff's Amended Compl. ¶ 22). <u>See</u> Defs.' Mem. 13 [Docket No. 20].

Taking the allegations in Plaintiff's Complaint as true for purposes of this motion, the Complaint is filled with references to Defendants' participation as it pertains to the constitutional violations noted above. <u>See, e.g.</u> Am. Compl. ¶¶ 31, 33-34, 41-43, 65-66, 74, 77, 81-82.  Thus, the Court finds that Plaintiff has made an adequate showing that Defendants were directly and personally involved in this action.

### *b.  Failure to State a Claim*

### <u>i.  Count I: § 1983 False Arrest</u>

Plaintiff's Complaint alleges that Defendants arrested Plaintiff "without probable cause to believe [he] committed criminal activity." <u>See</u> Am. Compl. ¶ 65.  Defendants, however, assert that said claim fails for several reasons.  First, Defendants argue that this claim should fail because Plaintiff does not allege that he was actually arrested by Defendants.  Second, that the affidavits of Minnesota State Patrol Captain Fraser, Major Al Smith, and Major Michael L.

Aselson [Docket Nos. 22-24] prove that they were not involved in the decision to arrest Plaintiff nor did they effectuate his arrest. Finally, Plaintiff contends that based on the totality of the circumstances, Captain Fraser's (the only named state patrol defendant to date) conduct was objectively reasonable at the time.

With respect to Defendants' first argument, the Court overrules Defendants' objection pursuant to the discussion above. Accepting the facts pled in Plaintiff's Complaint as true and liberally construing said facts in his favor, Plaintiff has sufficiently shown Defendants to be directly and/or personally involved in causing Plaintiff's purported arrest. As for Defendants remaining arguments, the Court finds the affidavits of Smith, Fraser, and Aselson as "matters outside the pleadings" that for purposes of their Rule 12(b)(6) motion will not be considered. Therefore, the Court declines to make any determination at this time as to whether Captain Fraser's conduct was "objectively reasonable" at the time of Plaintiff's alleged arrest without probable cause as Defendants support for their argument is based almost entirely on the aforementioned affidavits. See Defs.' Mem. 17-18.

Nevertheless, for purposes of pleading a § 1983 false arrest claim, it is enough to allege a defendant arrested the plaintiff without probable cause. Sartin v. Comm'r of Public Safety of State of Minnesota, 535 F.2d 430, 434 (8th Cir. 1976). Here, Plaintiff specifically states that Defendants caused the arrest of Plaintiff without probable cause. Moreover, taking the allegations in the Complaint as true, the Court finds that Plaintiff sets forth a cognizable claim. Plaintiff checked in with an official from MNDOT after arriving at the bridge collapse on August 9, 2007, and was then directed to the NTSB trailer. Plaintiff subsequently spoke with NTSB and OSHA officials about the bridge collapse. After leaving the OSHA trailer, Plaintiff proceeded to

leave the site on his own volition. Shortly thereafter Plaintiff was stopped and detained by

Captain Fraser, then arrested by "some or all of the Defendant Officers." Up until the point of

the alleged arrest, Plaintiff was never told to leave or informed that he was not authorized to be

at the bridge collapse site. Thus, the Court finds Plaintiff's claim to be plausible based on the

Complaint and facts asserted therein that Defendants "arrested, participated in the arrest and/or

failed to prevent the arrest" of Plaintiff without observing any criminal activity to warrant

probable cause to arrest him.

### ii. Count III: First Amendment Retaliation

A citizen's right to exercise the constitutional freedoms to speak and to seek judicial

relief without facing retaliation from government officials is clearly established. Hartman v.

Moore, 547 U.S. 250, 256 (2006). "To prevail in an action for First Amendment retaliation,

[the] 'plaintiff must show a causal connection between a defendant's retaliatory animus and [the

plaintiff's] subsequent injury.'" Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir.

2007)(quoting Hartman, 547 U.S. at 256). Retaliation need not have been the sole motive, but it

must have been a "substantial factor" in those decisions. Wishnatsky v. Rovner, 433 F.3d 608,

613 (8th Cir. 2006). Furthermore, the plaintiff must show that the retaliatory motive was a but-

for cause of the harm; that is, that the plaintiff was "singled out" for adverse treatment because

of his exercise of constitutional rights. Osborne, 477 F.3d at 1006 (quotation omitted).

Here, Plaintiff alleges that he was retaliated against (i.e., falsely arrested) for his

appearances from August 1, 2007, to August 9, 2007, on national and international media outlets,

including his appearances on the Geraldo Rivera Show, as well as for speaking with OSHA and

NTSB officials on August 9, 2007. See Am. Compl. ¶¶ 71-75. Conversely, Defendants argue

that this claim fails as a matter of law because Plaintiff's allegations do not distinguish which Defendants retaliated against him and in what matter. <u>See</u> Defs.' Mem. 19. Even assuming *arguendo* that Defendants were involved in retaliating against Plaintiff for the comments he made to the media and the government officials at the bridge collapse, Defendants contend that Plaintiff has failed to allege any causal connection between his actions and Defendants' conduct. <u>Id.</u> They also assert that Plaintiff failed to allege that he was singled out by Defendants or that any of the Defendants had the requisite retaliatory animus toward him. <u>Id.</u>

Defendants support these arguments through the affidavits of Fraser, Smith, and Asleson. Nevertheless, as the Court discussed above, for purposes of Defendant's motion to dismiss these matters are outside of the pleadings and should not be considered. Notwithstanding Defendants' arguments, the Court finds that the circumstances in this case raise the inference that the Defendants were involved and predisposed in retaliating against Plaintiff for the comments he made to the media and governmental officials, and their knowledge of Plaintiff's comments could have caused such prejudicial sentiment. Said findings are supported by the fact that Plaintiff overheard Captain Fraser inform an unknown police officer that Plaintiff was "that guy from Geraldo," and they were to keep Plaintiff "in a dark room" away from the investigation site to ensure he could not gather further information. Plaintiff was also never informed why he was being arrested.

Moreover, the timing of the events that gave rise to Plaintiff's retaliation claim presents at least a colorable argument that Plaintiff was singled out by Defendants and that motive could be inferred. <u>See</u> <u>Kilpatrick v. King</u>, 499 F.3d 759, 767 (8th Cir. 2007)(ruling that temporal proximity–the timing of a defendant's actions in relation to the timing of a plaintiff's protected

activity—can give rise to an inference of retaliatory motive). Plaintiff made the comments to national and international media outlets from August 1st through August 9th. On August 9th, Plaintiff also spoke with NTSB officials regarding the bridge collapse and offered his expertise regarding bridge construction, as well as advised individuals in the OSHA trailer concerning federal fall protection rules and safety. Based on those comments, Plaintiff was purportedly thereafter arrested by Defendants, without probable cause, for exercising his free speech rights. Taking these factual allegations as true, the Court finds that Plaintiff has provided at least circumstantial evidence giving rise to an inference of retaliatory intent. The Court finds such proof to be sufficient for purposes of Rule 12(b)(6) analysis. Thus, Plaintiff's claim for retaliation should survive.

### iii. Count IV: § 1983 Conspiracy Claim

Conspiracy to violate protected constitutional rights states a cognizable cause of action under 42 U.S.C. § 1983. Dennis v. Sparks, 449 U.S. 24, 29 (1980); White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). To prove a Section 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the allege co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. White, 519 F.3d at 814. The plaintiff is also required to prove a deprivation of a constitutional right or privilege in order to prevail on a Section 1983 conspiracy claim. Id. "The factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous." Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983). Plaintiff must at least allege that "'the defendants had directed themselves toward an

unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a 'meeting of the minds.'" Id.

Here, Plaintiff alleges that Defendants conspired to cause him damages by agreeing to falsely arrest and/or falsely institute criminal charges/proceedings against the Plaintiff; agreeing not to report each other after falsely arresting and/or charging Plaintiff; and generating false documentation to cover-up their own and others' misconduct. See Am. Compl. ¶¶ 41-42. Defendants, on the other hand, argue that Plaintiff has failed to sufficiently allege that any of the Defendants had a mutual understanding or meeting of the minds to violate Plaintiff's constitutional rights. See Defs.' Mem. 21. Hence, Plaintiff's Section 1983 conspiracy claim should be dismissed.

Nevertheless, the Court finds that Plaintiff has provided sufficient grounds to support his conspiracy claim. Plaintiff's Complaint generally alleges that Defendants conspired to cause him financial and emotional injury because of the comments he made on television regarding the Interstate 35 bridge collapse and the officials conducting its investigation. More specifically, Plaintiff claims he overheard Captain Fraser tell a Minneapolis police officer that Plaintiff was "that guy from Geraldo," and that officials should keep him "in a dark room" away from the bridge investigation so that Plaintiff could not gather further information about the investigation. While these factual allegations provide slender grounds for Plaintiff to proceed on this claim, the Court also recognizes that "it is a rare case in which the plaintiff will be able to provide direct evidence of a conspiratorial agreement." Smith, 699 F.2d at 437. Therefore, the Court holds that the facts alleged by Plaintiff are sufficient to sustain his conspiracy cause of action.

### iv.  Count VI: § 1983 Equal Protection-Class of One

The Equal Protection Clause ("EPC") of the U.S. Constitution provides that no state shall "deny to any person...the equal protection of its laws." U.S. Const. Amend. XIV, § 1.  The EPC essentially requires that "all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  The purpose of class-of-one equal protection claims under the Fourteenth Amendment "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  To allege a "class-of-one" equal protection claim, the plaintiff must assert that "he had been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.</u>

Here, Plaintiff alleges that he was intentionally treated differently by Defendants as a result of engaging in his constitutionally protected right to free speech. <u>See</u> Am. Compl. ¶ 43. Plaintiff also claims that Defendants acted with discriminatory intent by treating him differently and trying to cause him injury by generating false evidence. <u>Id.</u>  He further states that he was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claims against Minneapolis and Minnesota Police Officers. <u>Id.</u>

The Court, however, finds that this claim should be dismissed for several reasons. Plaintiff has failed to direct the Court to any substantive law suggesting that a Section 1983 equal protection-class of one claim under these alleged facts is an actionable claim.  Plaintiff has not alleged that he is a member of a protected class.  The Court also agrees with Defendants that

while Plaintiff claims he is similarly situated to other individuals who "were not victims of police misconduct and/or potential claims against Minneapolis and Minnesota Police Officers," such a comparison is so broad and vague that it is impossible to conclude that he was similarly situated to anyone in the same situation on August 9, 2007.   Plaintiff's Complaint also fails to identify any individuals who were permitted to be at the bridge collapse on August 9, 2007, and who spoke with government officials about the bridge collapse, but were not later treated like Plaintiff.  Thus, Plaintiff's equal protection-class of one claim should be dismissed.

### c. *Qualified Immunity*

Finally, Defendants argue that the doctrine of qualified immunity protects them from liability for alleged misconduct which they reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred.  "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson, 526 U.S. at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640

(1987)(citations omitted).  Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996).

The Court found above that Plaintiff's claims (minus the equal protection claim) could be construed as viable constitutional/federal claims that are clearly established.  Therefore, the Court's qualified immunity analysis turns on the question of whether Defendants actions under these alleged circumstances were "objectively reasonable" in light of the federal rules that were clearly established.  Taking all allegations and inferences from Plaintiff's Complaint as true, the Court finds that Defendants at this time are not entitled to qualified immunity as the unlawfulness of their acts was apparent.  Plaintiff was lawfully permitted to be at the bridge collapse site, and was subsequently detained and arrested without justification by Defendants.  Any reasonable officer would have known that such an arrest without any explanation or reason would have risen to an Section 1983 false arrest violation.  The same is true when said actions were facilitated and effected in agreement with other Defendants and in retaliation for the comments that Plaintiff made to the media in the days leading up to the date in question, as well as Plaintiff's interactions with OSHA and NTSB officials on the day of the incident.  These allegations are therein supported by the comment made by Captain Fraser instructing the Minneapolis officer that Plaintiff was "that guy from Geraldo," and that officials should keep him "in a dark room."  Accordingly, Defendants' motion to dismiss also fails under the doctrine of qualified immunity.

### v.  State Claims Against Defendants

*(a). Rule 12(b)(6) Analysis*

Plaintiff also asserts claims against Defendants for false arrest (Count II) and conspiracy (Count V) in violation of the Constitution of the State of Minnesota and Minnesota law. For the reasons previously discussed herein as they related to Plaintiff's federal claims for false arrest and conspiracy, the Court finds that these claims have also been adequately pled and that the facts provided are not only conceivable, but plausible.

### (b). Official Immunity

In the alternative, Defendants assert that common law official immunity bars Plaintiff's state claim for false arrest against Captain Fraser. Official immunity is a common law doctrine intended "to protect public officials 'from the fear of personal liability that might deter independent action.'" Janklow v. Minnesota Bd. Of Exam'rs for Nursing Home Adm'rs, 552 N.W.2d 711, 715 (Minn. 1996)(quoting Elwood v. Rice County, 423 N.W.2d 671, 678 (Minn. 1988)). When a public official is charged by law to perform duties that require the exercise of discretion or judgment he or she may be immune from personal liability for injuries resulting from performance of those duties. See Sulsa v. State, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976). Official immunity protects all decisions made by a public official when those decisions call for the exercise of discretion. Watson by Hanson v. Metro. Transit Comm'n, 553 N.W.2d 406, 414 (Minn. 1996). Stated differently, official immunity covers all but the "ministerial duties" of a public official, that is, duties that are "absolute, certain and imperative." Id.

Official immunity analysis applies a two-step inquiry to the identified conduct: first, the court must determine whether the conduct required the exercise of judgment and discretion and is therefore the type of conduct protected by official immunity; and second, the court must determine whether the alleged acts, even though discretionary, were stripped of the immunity's

protection because the official acted without legal reasonableness in violating a known right. See Davis v. Hennepin County, 559 N.W.2d 117, 122 (Minn. App. 1997)(applying two-step process), review den'd (Minn. May 20, 1997). Here, the Court finds (and the parties do not make any argument to the contrary) that Captain Fraser's alleged conduct (taken as true) wherein he detained and subsequently arrested Plaintiff for no apparent reason constitutes discretionary conduct which falls under the official immunity defense. [4]

Nevertheless, when an official willfully exercises his or her discretion in a manner that violates a known right, the protection of official immunity ceases. See Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). This limitation, often referred to as the "malice" exception is defined by an "objective inquiry into the legal reasonableness of an official's actions." State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn. 1994). "Malice 'means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Rico, 472 N.W.2d at 107 (citations omitted).[5]

In Gleason v. Metro. Council Transit Operations,[6] the Minnesota Court of Appeals noted that the analysis for determining whether official immunity has been abrogated by an unjustified violation of a known right is similar, but not identical, to the analysis of qualified immunity in federal Section 1983 actions. However, in Elwood, 423 N.W.2d at 677, the Minnesota Supreme Court declined to adopt the federal governmental immunity analysis to common law official immunity as applied to state tort claims because the U.S. Supreme Court had restructured its

---

[4] Defendants specifically states that "Captain Fraser...was performing discretionary acts within the scope of his official duties." See Defs.' Mem. 29.

[5] "In the official immunity context, wilful and malicious are synonymous." Id.
[6] 56 N.W.2d 309, 317 (Minn. App. 1997).

analysis, eliminating the subjective "good faith" component of legal reasonableness. <u>See id.</u> at 674-77. In subsequent decisions, however, the Minnesota Supreme Court has indicated favor for the federal standard and the federal courts' attempts to isolate purely legal questions on which to decide the applicability of immunity. <u>Gleason</u>, 563 N.W.2d at 317 (citations omitted). But the court has retained reference to the subjective "good faith" component of legal reasonableness in stating its test. <u>Id.</u> (citing <u>City of Mounds View</u>, 518 N.W.2d at 571).

The "subjective component," to the extent that it is retained in Minnesota's official immunity analysis, simply allows an official to argue that, despite the lack of an "objective" legal justification for the violation, the offending acts were taken in good faith. <u>Id.</u> at 318. In the end, immunity for the discretionary act applies when the official demonstrates: (1) that the conduct was "objectively" legally reasonable, that is, legally justified under the circumstances; (2) that the conduct was "subjectively" reasonable, that is, taken with subjective good faith; or (3) that the right allegedly violated was not clearly established, that is, that there was no basis for knowing the conduct would violate the plaintiff's rights. <u>Id.</u>

Applying these principles in a light favorable to Plaintiff's Complaint and the alleged facts and inferences therein, the Court finds that Defendants have failed to establish that Captain Fraser is entitled to official immunity at this time. Applying the same reasoning and findings from above with respect to qualified immunity, the pleadings offer sufficient evidence to suggest that Captain Fraser did not act with objective legal reasonableness in detaining and arresting Plaintiff, and that the law against false arrest was clearly established on August 9, 2007.[7] As for

---

[7] If probable cause to arrest exists, the subsequent arrest is lawful and there is no cause of action for false arrest or false imprisonment. <u>Lundeen v. Renteria</u>, 302 Minn. 142, 148, 224 N.W.2d 132, 135 (1974).

the inquiry regarding whether Captain Fraser acted with subjective good faith, there is no evidence presented to show that Captain Fraser's conduct warrants immunity. For purposes of this Rule 12(b)(6) motion, the Court declines to take into consideration matters outside the pleadings, including the affidavit of Captain Fraser which Defendants proffer as support to their argument that Captain Fraser subjectively acted in good faith with objective legal reasonableness given the totality of the circumstances. Therefore, Defendants official immunity defense with regards to Captain Fraser's conduct is overruled at this time.

*(c). Demand for Punitive Damages*

Defendants are, however, correct in noting that Plaintiff's demand for punitive damages with respect to the state claims is improperly pled per Minn. Stat. § 549.191. Minn. Stat. § 549.191 states in pertinent part that: "Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages." Therefore, the Court holds that Plaintiff's demand for punitive damages on his state claims should be stricken at this time.

Motion for Summary Judgment (in the alternative)

*Standard of Review*

In the alternative, Defendants seek summary judgment under Fed. R. Civ. P. 56. The Court can convert Defendants' Motion to Dismiss into a motion for summary judgment if it considers matters outside the pleadings. Fed. R. Civ. P. 12(d). However, those extra-pleading materials will not convert the motion to one for summary judgment if they are matters of public record, materials that do not contradict the complaint, as well as materials that are necessarily

---

embraced by the pleadings. <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999). "Matters outside the pleadings" include written or oral evidence that provides substantiation for, rather than reiterating, the allegations in the pleadings, and "new facts not alleged in any pleadings." <u>Boone v. PCL Const. Servs., Inc.</u>, 2005 WL 1843354, at *2 (D. Minn. Aug. 2, 2005). If the motion is converted, summary judgment is appropriate when there are no genuine issues of material fact and the law favors the moving party. <u>See</u> Fed. R. Civ. P. 56; <u>see also</u> <u>Arnold v. Nursing & Rehab. Ctr. at Good Shepard, LLC</u>, 471 F.3d 843, 845 (8th Cir. 2006). Rule 56(c) directs the court to enter summary judgment if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The court views the evidence in favor of the non-moving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). However, once a party has established that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with specific factual evidence on every element of his claim on which he bears the burden of proof to demonstrate that there is no genuine issue of material fact for trial. <u>Krenik v. County of LeSeuer</u>, 47 F.3d 953, 957 (8th Cir. 1995). If the non-moving party fails to support an essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element renders all other facts immaterial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

### *Legal Analysis*

Defendants contend that they are entitled to summary judgment on the claims asserted by Plaintiff. In support of such contention, Defendants proffer "Additional Undisputed Clarifying Facts" by way of affidavits from Michael L. Asleson, Al Smith, and Thomas Fraser. <u>See</u> Defs.' Mem. 4-9. While Defendants claim that the facts presented by these individuals are uncontested, Plaintiff disagrees. For example, Defendants assert that "at no time did [they] participate in the decision to arrest the Plaintiff nor did they engage in any conduct to effectuate the Plaintiff's arrest." <u>See</u> Defs.' Mem. 8 (Fraser Aff. ¶ 15; Asleson Aff. ¶ 14; Smith Aff. ¶ 9). Conversely, Plaintiff claims that Defendants did in fact arrest him without probable cause. <u>See</u> Am. Compl., p. 11. In this instance, the Court is clearly presented with a "genuine issue of material fact" as to whether or not Defendants personally effected the false arrest claimed by Plaintiff. Thus, Defendants should not be entitled to summary judgment.

Moreover, the Court would find Defendants' motion for summary judgment to be inappropriate at this time because Plaintiff has not yet had the opportunity to question the Defendants regarding their "undisputed facts" or for that matter receive any discovery from Defendants. <u>See</u> <u>Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc.</u>, 162 F.3d 991, 996 (8th Cir. 1998)(citing <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986)("[S]ummary judgment is only proper if the nonmovant has had adequate time for discovery."); <u>see also</u> Pl.'s Mem. 3-4; Ex. A, ¶¶ 3-14. Neither Plaintiff nor his counsel were aware of these facts until after Defendants served and filed their dispositive motion briefing. Considering the prematurity of Defendants' motion, Plaintiff requests that the Court postpone its ruling on this motion pursuant to Rule 56(f)[8] so that, at a minimum, Plaintiff may take the depositions of Mr. Asleson, Mr. Smith, Mr.

---

[8] "Rule 56(f) allows a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed." <u>Dulany v.</u>

Fraser, and the City of Minneapolis police officers who interacted with Plaintiff on the dates in question. <u>See</u> Pl.'s Mem. 4 n.2. The Court finds that Plaintiff is entitled to the discovery he so seeks before Defendants' motion for summary judgment is decided on the merits. Therefore, at this time Defendants' summary judgment motion should be denied.

## RECOMMENDATION

Based upon the foregoing discussion, the Court **HEREBY RECOMMENDS** that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[Docket No. 18] be **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, III, IV, and V from Plaintiff's Complaint should survive dismissal. However, Plaintiff's Count VI (Equal Protection-Class of One) claim should be dismissed with prejudice, and Plaintiff's demand for punitive damages with respect to his state claims of false arrest and conspiracy should be stricken at this time. The Court **FURTHER RECOMMENDS** that Defendants' Motion for Summary Judgment (in the alternative) be **DENIED**.


Dated:  June 25, 2009

　　　　　　　　　　　　　　　 s/ Arthur J. Boylan
　　　　　　　　　　　　　　　Arthur J. Boylan
　　　　　　　　　　　　　　　United States Magistrate Judge

---

<u>Carnahan</u>, 132 F.3d 1234, 1238 (8th Cir. 1997). "When seeking such a continuance, the party opposing summary judgment must file an affidavit with the trial court to show what specific facts further discovery might unveil." <u>Id.</u> Here, Plaintiff met its Rule 56(f) obligations by filing the Affidavit of Erica Faaborg in support of the request to continue the summary judgment motion to a later date. <u>See</u> Pl.'s Mem., Ex. A.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with in the Clerk of Court, and by serving upon all parties, written objections that specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **July 10, 2009**.